This is the matter of Wilson Emilio Pagliaro, is it? Ben Mateo, USA's Attorney General. Shall I start? If you want to. Sounds like a plan. Good afternoon, your honors. May it please the court, Tracy Hubbard on behalf of Petitioner Wilson Pagliaro Mateo. I'd like to reserve five minutes for rebuttal. Okay. Can I ask you something right out of the box? Yes. Does your client go by Pagliaro or Mateo or Mateo together? Well, Wilson is his first name, Pagliaro Mateo is his two last names. So you'd say them together? Yes. Okay. Thank you. You're welcome. And I should make clear, it's two separate last names, but he uses both of them. Sure. He uses both. Yes, your honor. Thank you. But I understand the origin of that. Okay. Thank you, ma'am. You're welcome. The sole issue before the court today is whether the Pennsylvania offense of robbery of a motor vehicle constitutes a crime of violence under 18 U.S.C. 16B. Petitioner contends that it doesn't because as determined by the Ninth and Seventh Circuits in reliance on the Supreme Court case in Johnson, 16B is unconstitutionally vague. The first question in coming up with the 16B is unconstitutionally vague is trying to determine what the standard is that this court has applied to 16B and then determine why that standard is unconstitutionally vague. Prior to Johnson and DiMaio, I spent countless hours trying to understand Aguilar and trying to identify what... You're not the only one. Excuse me? You're not the only one. And trying to understand what that standard meant. And not... And I understood that it said that if the offense... It almost as if it sounded bad. If your gut feeling about this criminal offense was that it sounded pretty violent, then it was almost as if it was held to be a crime of violence. That's what was happening in immigration court. What the IJs were doing or the immigration judges were doing was that they weren't applying any sort of least culpable conduct standard of a categorical approach. What they were doing is they were using a most culpable standard in immigration court. They were looking... Let me ask this, and this kind of gets into the Johnson issue. You're aware of the line of cases that distinguish between criminal cases and immigration cases and cases that would suggest that the kind of Fifth Amendment due process problems that pop up in the criminal context don't come up in the civil context. If we look at this as a civil statute, and I'm aware of the cases that say that immigration may be civil but it's much more like criminal, and I agree with that for whatever it's worth, why should we take the due process concerns of the Fifth Amendment from Johnson and layer them into an immigration statute? Because the statute at issue in the case before the court is 18 U.S.C. 16B, and that is a federal criminal statute. It is referenced in an immigration statute, but the actual statute we're analyzing is 16B to determine whether 16B is a crime of violence. Sure, but you're opposing counsel in the 28J... Well, not 28J. In the letter responses we asked for, he is saying to us, you know, those constitutional issues, those notice issues have less force and effect in the immigration context specifically, and cites a series of Supreme Court opinions. Can you respond to that, please? Well, if you look at Padilla, and Jordan V. DeGeorge, those cases seem to indicate that immigration cases, deportation statutes, would require just the same amount of scrutiny as a criminal statute because the issues or the liberty interests at stake are very high. The deprivations are quite high in those cases. There is specific language, so would you agree? And they've cited cases, let's see, where they make the point that the notice requirement, the court may not reach that question. This is their footnote one, because aliens are not entitled to challenge deportation statutes as impermissibly vague because the statute does not afford the alien fair notice of the possibility of removal. I'm sorry, that's footnote two. And specifically citing Galvin v. Press and Harciades v. Shaughnessy, Marcello v. Bonds. Now, granted, those cases reach back into the 50s, but are they still good law? I don't think they are. I mean, there is in civil and immigration context, there is the notion that you use a different standard of vagueness. However, what we are analyzing here is a criminal statute, and even the government has conceded that 18 U.S.C. 16B is a criminal statute. So I think in analyzing that, we have got to determine whether that statute is void for vagueness based on the heightened standards. Should it matter to us that the Supreme Court in Leocal had a unanimous decision, didn't have any issue or concern about it being vague, but applied it, upheld it in the face of challenge, not a vagueness challenge, but I mean, why would we extend Johnson to 16B when there is a unanimous Supreme Court opinion from not that many years before, 2004, saying this is okay? Well, Your Honor, the Leocal decision is really looking at whether we are talking about a DUI and whether the recklessness standard under DUI rose to the level of an aggravated felony. The Supreme Court had previously held that the ACCA residual clause, various times before its most recent pronouncement in Johnson, that that was not unconstitutionally vague. Yeah, you are not going to have to persuade us that it is a little bit head-snapping. That is what it is. But at least in Johnson, they do say it. In Leocal, they don't even imply that there is a problem. So the Supreme Court has on more than one occasion told the district courts and the circuit courts, don't you guys bother overruling our precedent. We will take care of that. Is it a step too far for us to say, oh, Leocal is overruled by implication because of Johnson? Is that something that the Supreme Court of the United States should have to do? I don't think it is a step too far at all. I mean, Leocal is cited in the ACCA residual clause cases too. I mean, it is that same level of analysis. But not in Johnson, right? Not even a peep about it in Johnson. I am not certain. No, I don't think it comes up at all in Johnson. Can I ask you a question about the mens rea argument that you make? Sure. If I have understood your argument correctly, you say that the Pennsylvania gap-filling statute puts a minimum mens rea of recklessness into the offense, right?  Okay. Given that this is a carjack statute, and that part of it is, at least by interpretation of the Pennsylvania state courts, that there has to be some force involved, how could an offender take a vehicle from the presence of a lawful possessor by force in a way that wasn't somehow intentional? Well, the answer to that is I think Jones actually provides some guidance on how that could happen. The issue is when you look to the carjacking statute, the first thing is the force that's necessary to, the minimum force necessary to commit the offense is entering the vehicle, and the vehicle is running, and just moving the stick shift or the shift from park until drive and driving away. That satisfies the taking and that satisfies the minimum force requirement. So how it can be done recklessly is the failure to perceive that there is someone in the back of the vehicle in terms of in the, standing in the bed of the vehicle as was the case in Jones, or by the very notion if someone was filling air in the tire, on the side of the tire, and they failed to perceive that. You're coming up with, I guess, and you've cited some cases in your briefing too, but isn't the whole pitch that's being made about unconstitutionality dependent on the question of what the ordinary case is? Well, the question is, is what is the ordinary case? And I have no idea what the ordinary case is, and that was a problem with the residual clause, and that's a problem with 16B. Isn't the ordinary case one where some force is involved? How do you determine that? I mean, is that based on your gut reaction? Because the ordinary case, what I've seen, since this case is pending and carjacking when you're watching the news, what I see more often is the case that someone will leave a car running at a gas pump and go in to pay, you know, the gas, and then on their way out, they will see someone jumping into their vehicle and driving away. That is technically a carjacking. So I see that as much more so a ordinary case based on what I've seen in the news. I have not seen a sort of a strong-arm robbery case. That seems to be, like, the most culpable. But the issue with ordinary cases, how do you determine it? Well, Leah Kell talks about burglary as the quintessential, right, example of where you've got a risk of some physical harm, right? Yes, it does. And that's a circumstance where you may or you may not bump into somebody, and they say that's the classic case. In carjacking, by definition, you have to do it in the presence of somebody. Doesn't that mean that if burglary is the perfect example of where, oh, yes, this would be something that would fit within 16b, that it's even more so the case with a carjacking? I would say no. And the reason is because from the presence of someone does not mean from the immediate presence. It doesn't mean that the person is standing right next to you. The examples, the person could be, you know, 20 feet away from you. In Bonner, and the reason I included that case, even though it's a horrific set of facts of robbery and, you know, burglary and all, they also charge it with robbery of a motor vehicle. And they hold there the presence element is satisfied where the victim is inside her home and the defendant is in her driveway driving away the car. And because she knew her car was being taken, it doesn't require immediate presence. And Jones, they were separated by steel and glass. They couldn't get to each other. So the idea of confrontation is not the same as it is in a hypothetical, you know, escalation of a burglary. Justice Scalia actually talks about how you ask the question that you did, how do you determine a typical case? And he cites Google and he does it citing to an opinion of Alex Kaczynski. It's a wonderful confluence of interests. You've got Scalia citing Google who cited Alex Kaczynski's use of Google. I'm not sure I've ever seen that before. As a practitioner, I can tell you that the difficulty is, is that we don't know how to apply this standard.  And his language that he used, it was can you think of any case in which a, you know, a robbery of a motor vehicle doesn't require a, you know, taking from the person and this close conflict. And it's a escalation of the offense from a least culpable to a most culpable offense. It's all a gut feeling. The problem is that we don't know how to analyze it. I don't know how to say, well, let's, what is the ordinary case? Where do I go to find the ordinary case? Because that's step one of my analysis. And how do I convince the judge? When you say you don't know how to do that, the Supreme Court in Johnson was able to cite a number of cases where they said, look, we've just struggled with this. We can't get it right. The circuit courts can't get it right. We're all over the map. There isn't a history like that with 16B, is there? Well, not before the Supreme Court. I think that there is. It hasn't gotten to that point yet. But it doesn't mean that the analysis in Johnson is identical to the issues and the analysis that would be in 16B. I mean, I think you're going to see that coming. But it's not, it doesn't. Well, 16B isn't the new statute. I mean, it's been around for a long time. And yet there's, you know, there doesn't seem to have been the same degree of problem where the Supreme Court at least perceived was the case with ACCA. Or if there is, I haven't seen it pointed out to us. Well, presently we know that the Seventh Circuit, as well as the Ninth Circuit, has determined that 16B is unconstitutionally vague based on Johnson. And we also know that the Fifth Circuit looked at this issue and found it unconstitutionally vague as well and then withdrew that opinion for an en banc determination, which is still pending. So the idea is that every circuit that has looked at 16B presently has ruled it unconstitutionally vague. And that is, and the truth is if it's not unconstitutionally vague, then we need a standard by which we can apply it in the field. Because I have no, before Aguilar what we were doing, and I can tell you this because I did it many times, is that we said, okay, we need a reckless mens rea. If we get a reckless mens rea, it's a minimum mens rea, and it's not, we have no mens rea specified in, under the record of conviction, then we are good. And it is not an aggravated felony. And that is what the immigration judges were doing pre-Aguilar. So it was sort of a bright line test. Whether it was correct or not, it was something that immigration lawyers or practitioners, we could apply and an immigration judge would accept. Now what we're facing is that we don't know, you know, it's basically does it sound bad. In the Fifth Circuit they ruled unauthorized use of a motor vehicle is a crime of violence because of the fact that it's a hypothetical escalation. What if the owner was somewhere nearby and saw you take that car? Well, by the way, that in Pennsylvania qualifies as a carjacking, despite the fact that there was no confrontation, there would be no communication, no threats, no nothing. But simply the fact that the owner saw the vehicle taken is a carjacking. And the examples that I provided to the court show that this has been prosecuted, that that activity has been prosecuted in Pennsylvania. Thank you. I think quite a bit of time for rebuttal.  May it please the Court. My name is Matthew Connolly, and I am here today to represent the Attorney General of the United States. Your Honors, Section 18 U.S.C. 16B is not unconstitutional under Johnson because Section 16B does not share the four infirmities that the Supreme Court found significant in Johnson's case. What we do with the language, by its nature, involves a substantial risk. If you look at the 3702, I can come up with so many scenarios where there is not only no substantial risk, but no risk at all. I put out these valet parking scenarios. If I go and buy one of these yellow valet parking scenario jackets, it says valet parking, and I go to a hotel and stand there. Sooner or later someone is going to hand me their car keys, thinking I'm going to valet park it. I take the car keys and say thank you very much. I get in the car and drive away. I've just committed an offense under 3702A as I read it. In that scenario, there is almost no risk of any kind of violent confrontation unless the person knows that I'm really not there to park their car legally, and I don't know how they'd find that out. Well, Your Honor, if they assume you're there to park the car legally, then the third element, as found by the Superior Court, would not be present. There would not be a use of force, intimidation, or an inducement of fear. There would essentially be deception. So you're saying that use of force is indeed an element of the crime of robbery of a motor vehicle? I would say so, yes, Your Honor. So why aren't we under Section 16A? Because, one, it was not argued under Section 16A, and under General versus United States, or SEC, were restricted to the basis that the board and the immigration judge decided this case. What about the example Ms. Hubbard gave? If you don't like my example, someone looks out the window and sees somebody getting in their car from a distance of, say, 50 feet and driving away. They left their keys running. I have read a lot of those cases where somebody runs in to pay for the gas pump that they've just put in their car, and they leave the keys in the ignition. They don't even have to have the keys in the ignition anymore because the keys no longer go in the ignition. You just have the key sitting on the seat. And someone sees the engine is running, gets in, and drives away. Would that fit under 3702A? Well, the Commonwealth at that point would have to show that there was indeed a use of force, intimidation, or reducement of fear, and that the person in lawful possession of the car was in the presence. In the presence. You're better off with the force, intimidation, and fear. In the presence of runs into some ambiguities. Both of those factors have to be present as well as the taking. The Bonner case is instructive because the victim there surrendered the keys to the car at knife point. The taking occurred at that point because control of the car passed when the victim had the choice of facing the knife or turning over the keys. This is not something where the person just ran off and started up the car and drove off on the driveway. There was interaction between the perpetrator and the victim. And that interaction involved the use of force, intimidation, and reducement of fear. Isn't the problem here not so much the language of the Section 16B but the application of the categorical approach to that language? The application of the categorical approach is actually simpler in 16B than it is in the Armed Career Criminal Act's residual clause. Because 16B is a classic statute where the categorical analysis is performed by looking at the elements of the statute, not at any particular conduct that might result from the crime. And then determining under those elements the least culpable conduct that would satisfy those elements. Well, haven't you just argued yourself straight into Johnson by saying that? Because Johnson says that the two features that create the problem for the court, that it identifies as the most importantly set forth problems, are one, trying to imagine the ordinary case, and two, trying to figure out what the minimum threshold level of risk is. Those are both things that have to be undertaken in the categorical approach under 16B, right? Your Honor, I think Johnson actually uses a broader application with its two features. The ordinary case is only part of the first feature, which is the difficulty in determining the risk itself. And then the second feature is the difficulty in determining how much risk is enough that it satisfies the serious potential problem. The problem with Johnson is that the ordinary case, as it's discussed in Johnson, and ordinary case is not a precise term of art, but as it's discussed in Johnson is the ordinary case that was discussed in James v. United States where the judge has to look at how crimes are committed in a typical fashion, not the least culpable conduct, not something defined by the elements. But what's the majority view? Do we Google it? Do we look at other forms of statistics? What's that? And then the other thing the judge has to do is imagine how that crime is actually going to play out once it's completed. The first part of that, how do we answer that question? Do we bring in a team of social scientists and conduct a survey of all of the ways this crime has been committed and then break that out statistically? How do we do that? Fortunately, Your Honor, I don't have to defend the ordinary case analysis under the ACA. The analysis that's important here is the least culpable conduct, which is exactly what this Court has found is the proper analysis under the categorical approach in Aguilar and a host of other cases. I thought I heard you say we look to the elements of the offense. That is correct. But that's Section 16A. So 16A says an offense that has as an element the use of force. And 16B says any other offense that is a felony and that by its nature. So aren't we back to this ordinary case? No, Your Honor. 16A requires a specific element, the threatened use or attempted use of force. You have to address why the Seventh Circuit and the Ninth Circuit are wrong because they both seem to think that it is, in fact, the same two problems. They certainly do. They both say we're right dealing with the ordinary case and we're right dealing with the threshold level of risk. How did they get it wrong? They short-circuited the analysis. They assumed that the ordinary case analysis from the ACAA is the same analysis that's required under the categorical approach. You say you're making a distinction between ordinary case, basically ACAA and hypothetical I just gave you a few minutes ago, and the by its nature language under subsection B. You're saying those two by definition are different. By its nature does not mean the ordinary case. By its nature means that the court looks at the elements of the statutory offense to determine the least. Why did you put A in there? I'm sorry, Your Honor. If we read it that way, we've got two subdivisions that mean exactly the same thing because section A says an offense that has as an element of. You're saying that in order to figure out under subsection B, we have to find out whether or not there is an element of? If I may perform the analysis on this statute, the elements of this statute are a taking in the presence of the lawful possessor through the use of force, intimidation, or the inducement of fear. The through the use of force, intimidation, or by fear is the judicial interpretation of the statute. That is correct, Your Honor. It's not in the statute itself. But that is the way the crime is defined within the Commonwealth of Pennsylvania. And now force under 16A requires that force, specifically violent force, be an element of the crime. Why violent force? Pardon me? Why violent force? I remember years ago when I was in state court, there was a debate for years about whether or not a, where the distinction was between theft from the person and a robbery. Robbery, the lowest degree of robbery requiring theft, however slight. And it came up in the context of a pickpocket versus a push snatch. That's correct. And the court, Pennsylvania Supreme Court, finally said that if the force is only directed against the object, as in the pickpocket, that's a theft from the person. I don't think I've gotten this wrong. And if the theft was the vote directed against the person to move the property, as in a push snatch, then it was a third-degree robbery, a much more serious offense. So you're equating force with something that necessarily does not suggest the level of harm or evil or even force that you're arguing. Force can be however slight. I'm adding that language, but the court has used that language. The statutes use that language. The court has used that language. And if I may just quickly on that point, it's force however slight that's sufficient to compel the victim to give up his property. Snatch the keys out of their hand. Snatch the keys out of their hand. Don't resist after that point. That's force however slight to give up an extremely expensive piece of property. That's quite a compulsion. Well, I'll tell you, you just said the magic word property. I know a whole lot of folks. In fact, I've had this discussion with people in my family. It's only a property and let it go. Do not resist. Don't chase after the person. You probably have heard some of the discussions or heard them yourself. Exactly, Your Honor. And as the court in Jones said, we should not minimize the effect of the force simply because the victim sensibly decided not to resist. But back to the analysis. Let's go back to the by-its-nature language. Well, by its nature, the intimidation or the inducement of fear may not satisfy 16A's use, attempted use, or threatened use of force. Why is that? I'm still hung up, Mr. Hubbard, on the, excuse me, Mr. Connolly. I apologize, Mr. Hubbard, Mr. Connolly. I'm still hung up on the distinction between 16A and 16B because I'm hoping you're going to get to the answer to Chief Judge McKee's question of, if you interpret by its nature to mean the elements of the offense, does that just make 16B redundant of 16A? No, because if you look at the elements of the offense, the question is, is there, looking at the elements, is there a risk, any risk that force will be used during the course of committing the offense? That is your first step. If you come up with an offense that has no risk that force will be used during the commission, perhaps tax evasion, then that's not a crime of violence. I don't mean to be obtuse, but I'm just not following you yet, and I apologize. 16A says an offense that has as an element the use, attempted use, or threatened use of physical force. 16B says a felony that by its nature involves a substantial risk of physical force, et cetera, et cetera. You said read by its nature to mean an element. So if you read by its nature to mean, oh, force has to be an element, how is that any different than 16A, which says an offense that has an element? No, read by its nature to determine the least culpable conduct that is sufficient to meet that case, and then looking at that least culpable conduct, is there a risk that it's an element? But then you said, unless I missed you, you said the least culpable conduct, and how do you figure that out? Because it's an element. Isn't that what you said? No, Your Honor, what I'm saying is the elements dictate what the least culpable conduct is. Okay. If the perpetrator does not fulfill the elements, he hasn't committed the crime. Right. That would be 16A, right? No, Your Honor. And this is why we account for this as a possibility, because force is not always required in a burglary statute. Whether that was a correct example in light of Johnson is another question, but force does not have to be an element of a crime under 16B. The point under 16B is that the commission of the crime itself may lead the perpetrator to use intentional force. Substantial risk. That's a little bit different than may lead, isn't it? Well, then the question is, is there a risk? And then the question is, what makes the risk substantial? That's the second half of the analysis. Well, I'm not – If you have a statute that has no risk, it's overbroad and it doesn't fit into 16B. If you have a statute that has a risk, then as the Supreme Court – I can come up with scenarios where there'd be a risk of fiscal force, and to say it would be inconceivable to have a risk, I can't get my mind around that. I think that's why it's worded, you have to have a substantial risk that force will be used. Substantial is a very important modifier there. It is an important modifier, Your Honor. The point, though, is that, once again, what's going to determine whether or not that substantial risk exists is an examination of the elements of the crime, not an imagined ordinary case scenario. And I would suggest that 16B is not – the real question here is whether or not it's vague on its face. And I would suggest the question ought to be whether 16B is vague as applied, and that it would not be vague as applied to this statute. It might be vague as applied to tax evasion. Can you go back to the Seventh and Ninth Circuit with me here for a minute? You said they short-circuited the analysis. Here's Judge Sykes speaking in the Seventh Circuit case of Uvicea and saying that, in Leocal, the court stated that Section 16B directs courts to consider whether an offense would, quote, naturally, unquote, involve a person acting in disregard of the risk that physical force might be used against another, This requires an evaluation of the elements and the nature of the offense of conviction. Ellipses of my own there. Leocal's interpretation of 16B is indistinguishable from Johnson's interpretation of the residual clause. In other words, it appears that the Seventh Circuit is saying, this is an ordinary case analysis. It's the same thing. What do you rely on to say, no, no, no, no, ordinary case is different from least culpable conduct, and least culpable conduct is a different concept than ordinary case? What authority are you citing us to? I'm reading of Johnson, Your Honor, because you have a serious potential risk of injury. Try not to say too far from the microphone. I'm sorry, but it's being recorded and we'll lose you. I'm trying to hear. The least culpable case, or the ACAA, was forcing judges to look at potential risk of injury that went beyond the commission of the offense. So that's where judges had to come up with the imagined ordinary case of the offense and then imagine what the consequences of committing that offense were. That's not necessary. Isn't that what's happening here, where you ask, what is it by the nature of this offense that could raise a substantial risk? It's not necessarily what happened. It's a hypothetical. What is it about this thing? I mean, Leocal, they're looking at burglary. They're not asking. I mean, Leocal is a case about DUI, and they're talking about it, looking at examples, and they come up with burglary as an example, as an example of where there is a substantial risk. It's not necessarily the case that you're going to run into the homeowner, but you might. There's a real risk you might, and that that will escalate into violence. It seems to be the court is there talking in 16b in a way that's akin to Johnson, is it not? Or is it different? Because if it's different, I'm eager to have you point out, how is it different? It's different because you don't have to make that jump to burglary. The court did, but the court could have gone straight to robbery, which requires a confrontation between the victim and the perpetrator. Sure, but they did do it. That's my point. They picked burglary. They used that analogy. They talked about substantial risk, not what really happened, but what might happen. That's a kind of an imaginary hypothetical exercise, and that kind of imaginary hypothetical exercise seems to be what the court was trying to write, at least in part, in Johnson. So if you're going to hang the difference, if the distinction you want us to rest on in an opinion is, oh, Johnson was about ordinary case, and 16b is really about least culpable conduct, totally different things, what are we going to say other than saying Mr. Connelly told us that? What are we going to cite to? What are we going to rely on to say these are different concepts? Not that you aren't good authority, but. . . I've never succeeded citing matter of the law, but. . . What would we cite to tell the world this is a real distinction, and by the way, the Ninth Circuit and Seventh Circuit totally misunderstood. Because the Supreme Court did not toss out the categorical approach. As the Supreme Court noted in Johnson toward the end of the majority opinion, the categorical approach is an important and a necessary approach for dealing with situations like 16b, which are predicated upon convictions. So that it is necessary to go back and look at convictions. Well, the categorical approach doesn't require an imagined way of committing an offense. It requires that the least culpable conduct match the generic offense, and if the least culpable conduct does not fall within the generic offense, the sentence is too broad. To me that's the same thing, of imagining a way to commit the offense. I'm sorry? I think it's the same thing. To say it's the least culpable offense to me is the same thing as imagining a way to commit the offense. Well, it's not only imagining a way that the offense could be committed, it's imagining under the ordinary case scenario the most common way, or as the Fifth Circuit said. Let me say the most common one. Or the most, or the articulable way, or the, that's why the question is. Or the ordinary case. Pardon me, Your Honor? The ordinary case is the archetypal case. That was the phrase that was used in the Fifth Circuit opinion. Yeah. I know you're out of time. Can I ask my colleagues indulgence for one more moment on a question? You had said in your briefing, or actually it was in your March 18 letter in response to our question, and I quoted this from your footnote too in that to Ms. Hubbard, that void for vagueness doesn't really apply in the immigration context. But in Lee et al., in Paragraph 8, excuse me, Footnote 8, it said, quote, although we deal, here we deal with Section 16 in the deportation context, Section 16 is a criminal statute and it has both criminal and non-criminal applications. Because we must interpret the statute consistently whether we encounter its application in a criminal or non-criminal context, it goes on and says the rule of lenity applies. Is that not the Supreme Court saying we don't care whether it's civil or criminal, or for that matter immigration, administrative? 16B has got to be interpreted the same across the board. No? When Congress ties an immigration statute to a criminal statute, then that criminal statute is going to be interpreted the same way in the immigration context as it would in the criminal context. Okay. So if it's void for vagueness in a criminal context, doesn't it have to be void for vagueness in an immigration context too? Because the statute is what it is, whether you're applying it in a criminal context or in an immigration context, right? Isn't that what Lee et al. is in effect saying there in Footnote 8? With the one caveat that 16B is a definitional statute. If it's void for vagueness when it's applied to past convictions but not void for vagueness when it's applied to actual conduct, that's going to hold regardless of whether it's criminal or immigration. Okay. What about the rule of lenity? You had a question, too, I think. Yes, sir. The rule of lenity, why wouldn't that apply here? Given the way we've been going around with you and Ms. Hubbard, doesn't that lead us right into the rule of lenity? And your pause would be the third element that suggests we consider the rule of lenity? My pause, I'm sorry, Your Honor, is that I do not have a firm grasp on the rule of lenity and how that would apply. But basically you cut the prisoner break in common parlance. If it's a situation where it may inure to the benefit of the defendant, in this case the petitioner, it may not inure to the benefit of the petitioner because of the consequences that come as a result of the particular rule of law, you cut them a break. You're lenient and you cut the prisoner break. Why wouldn't that doctrine, which is very powerful in criminal law, be applicable here? You have to first find the ambiguity, and you're probably going to say there's no ambiguity. I think Leo Cal did indicate that the rule of lenity would apply. It did expressly. And since that, then I apologize, Your Honor, I'm not able to identify then the consequences of applying the rule of lenity. I appreciate your gender. I'm good. Okay.  I'm fine. Thank you. Thank you, Your Honors. I would like to just address two points. Three, unless this is one of your two. Mr. Connolly is reminding us of the judicial gloss that had been put on 3702, that the taking has to be by force, intimidation, or fear. If you factor that into your Windows scenario, what does that do to the outcome? Does that mean that it's no longer a 3702 offense? No, the issue is that how the court has interpreted the use of force requirement, and that's the problem in this particular statute is that it has been interpreted so the use of force is satisfied where they just put the car in gear and drive away. It doesn't require any snatching of keys. It doesn't require any hand-to-hand. It doesn't require that there be any presence. The force is, and this is what happens in Jones. It does require presence. Well, it does require presence, and the presence can be 20 feet, 50 feet. It just requires that the owner, driver, lawful owner of the vehicle realize that the car is being taken. Isn't this a question that you deal with in all kinds of cases, which is on the margin, how do you define things? We don't throw the concept of negligence out the window and say, nobody could figure out what that means, even though what behavior might exactly constitute negligence in any given case can be a struggle, and a fact finder will have to deal with that legal concept and come up with an answer. Just because the lines aren't clear and sharp and bright doesn't mean they're so vague as to be unconstitutional. If all we had were bright lines, we'd have a much easier job, but we'd also have a slightly more chaotic society. The issue is that under the categorical approach, you look to the least culpable conduct punishable under the statute. So you are looking to the margin. That's exactly what the least culpable conduct says you do. You look to the outliers, to the margin. What is the least conduct that can be punished? Now, the problem with 16b is that there is a disconnect between the categorical approach, looking to the least culpable conduct, as well as the by its nature analysis, which requires that you look to an ordinary case. That's what Mr. Connolly has actually pressed upon us. I am confused, because now it sounds like you're arguing almost the same thing. He stands up and says, you don't have to worry about it, because that ordinary casing that they applied in ACCA, that's not what's going on here. It's the least culpable. It's the same identical thing that's going on here, because the categorical approach is used in both. It's used both in ACCA and it's used in, and you need to look at it. Then from there, the next level is, it's just different phrasing, but it's the exact same analysis. By its nature, how do you determine what by its nature means? You look to the ordinary generic crime to figure out what that looks like, and that's what's judicially interpreted and imagined abstraction. If you look to ACCA, you're doing the same thing, except now you're calling by its nature the ordinary case, and you're saying, okay, what is the ordinary case of this involved? And that, again, is a judicially imagined abstraction. It depends on what your gut tells you. From there, you then have to figure out, well, what does this imaginary offense, how does that look in terms of how do I assess what's the risk of that imaginary offense? If you say that the ordinary offense of robbery of a motor vehicle is you stick a gun in someone's face and you either rip them out of the car or tell them to push over and let you drive, that would be a very high standard of the ordinary case. However, if you define the ordinary case as you leave your car running at the gas station and someone who is coming out 20 feet away, as soon as you jump in and take off, if that's the ordinary case, that has a different level of risk. And the force there would be what, getting in, the act of the taking of the car? Yes. If that's the case, then the force doesn't mean anything. It keeps the car out of force. The robbery of a motor vehicle statute is in an artfully drafted statute. The plain language of the statute doesn't even require a force requirement. Are you suggesting that the Congress of the United States could never come up with a formulation that would not be too vague? The Congress has tried to capture an idea, and the idea is that there's so many different ways that a person could put their fellow citizens at risk of violence. We can't enumerate them all, so we're just going to say anything that, by the nature of the act, is going to put people at substantial risk. Those are the words we're going to pick. Your assertion is that's unconstitutionally vague. If that's unconstitutionally vague, is this an impossible idea for legislators to capture for the safety of the public? I don't know if it's an impossible idea. I can tell you 16b doesn't work. How would they do it differently? If we were to say this is bad law, it's unconstitutionally vague, do we just say you go back and try again? Is it the real problem? I'm sorry. Go ahead. Answer Gordon's question. I don't know, Your Honor. The key with 16a is you're not trying to imagine risk of force because it's an element. A risk of violence force is an element of 16a, so you're out of that trying to imagine what could possibly happen. So it's got to be an element or you're off the hook? Well, I can't say. In immigration, under immigration law purposes, there are plenty of statutes that are defined specifically extortion, forgery, theft, defense. So they're defined. So with respect to if they wanted to for deportation purposes, deportation statutes, they could define the statute. The real problem is applying the categorical approach to a broadly phrased statute. And it exists in both. If we were to look at real-world conduct, it would be another matter. Correct. So that statute could be fine if we said we're going to apply it to real-world conduct. It's when you get into this hypothetical that you get into this vagueness. I had one other question for you. Should we put the Sixth Circuit, as a result of its decision in the United States versus Taylor, in the category that they would find Section 16b constitutional? I'm not sure what the Sixth Circuit would do because I think they were looking at a very difficult set of facts. I think the facts in Taylor were very troubling. I mean, you had a carjacking, which, by the way, shows you the difference between the federal carjacking statute and the Pennsylvania carjacking statute. You had a murder. Why would those facts matter, though? They were looking at the residual costs under 924C, same language, right? It shouldn't matter to the analysis, but I believe it did because what was cited by the reason cited by the Sixth Circuit did not seem to hold water. I mean, there are no material differences between 16b and the ACCA residual cost. You apply ordinary case, you have to assess the risk to the ordinary case, and then you've got to figure out whether that risk is enough to meet this threshold. They point to Justice Scalia's own words. When he went to distinguish and tell the whole world, hey, don't worry, we're not setting off the nuclear bomb that Justice Alito talked about in his dissent. It's all going to be good. Not at all. Don't worry. The first thing he said was, look at these enumerated offenses. They make it so muddy. I mean, that's what the Sixth Circuit's leaning on. They didn't make it up. It's Justice Scalia's words. Why is Judge Rogers wrong to point to that and say, that's why this is different? ACCA's got that confusing list of enumerated offenses. 16b does not. 16b, ACCA at least had some attempt to figure out guideposts to point to what they were thinking about when they were thinking about the serious potential risk of physical injury. 16b has nothing. There are no guideposts. There's nothing that can be used to figure out what Congress intended or was thinking about as this substantial risk. So if no guidepost is worse than a guidepost, why would Justice Scalia say the enumerated factors make this worse? Justice Scalia stated that it makes it confusing, but he said it would make it even more confusing to the thousands of unenumerated offenses. There's no way to figure out what they mean. If you have some example and those examples, although poor, you can't figure it out, take away those examples doesn't help you make anything any clearer. And more importantly, what Justice Scalia said right behind that was he said, more importantly, using those words, the problem here is that you're using the categorical approach to try and determine what this risk is. And those two together, the combination of those two is what makes this unconstitutionally void. Thank you. Have you ever argued before? I've not seen you before. I was here. I actually was the co-counsel on Rojas, but Craig Shagan argued the case. So I watched. Thank you very much. I assume you kind of come in and out with some regularity. I don't think I've seen you before, have I? I'm sorry. I don't think I've seen you before either, have I? No, Your Honor. This is my first trip to the court, sir. How do you do? How are you? Thank you very much. Thank you.